FILED
FEB 02 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JSW

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

C 15   471

| ELDRIDGE JOHNSON, et al., | No. C-12-2730 MMC |
|---|---|
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO SEVER; DIRECTIONS TO CLERK; DIRECTIONS TO PLAINTIFFS** |
| v. | |
| UNITED CONTINENTAL HOLDINGS, INC., et al., | |
| Defendants. | |

Before the Court is defendants United Air Lines, Inc. ("United") and Continental Airlines, Inc.'s ("Continental") "Motion to Sever Parties and Claims," filed October 3, 2014. Plaintiffs have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

The instant action is brought on behalf of twenty-three United employees who allege employment discrimination claims. Twenty-one of the plaintiffs are employed by United as Captains (collectively, "Captain Plaintiffs"), specifically, Odie Briscoe ("Briscoe"), Sal Crocker ("Crocker"), Mario Ecung ("Ecung"), Ken Haney ("Haney"), Terence Hartsfield

---

[1] By order filed December 2, 2014, the Court took the matter under submission.

1  ("Hartsfield"), Terry Haynie ("Haynie"), Richard John ("John"), Eldridge Johnson
2  ("Johnson"), Johnnie E. Jones, Jr. ("Jones"), Anthony Manswell ("Manswell"), Leon Miller
3  ("Miller"), Karl Minter ("Minter"), Paul C. Noble ("Noble"), Xavier Palmer ("Palmer"), David
4  Ricketts ("Ricketts"), Glen Roane ("Roane"), Frederick Robinson ("Robinson"), Leo
5  Sherman ("Sherman), Lester Tom ("Tom"), Erwin Washington ("Washington"), and Darryl
6  Wilson ("Wilson"). The remaining two plaintiffs are employed by United as Operations
7  Supervisors (collectively, "Operations Supervisor Plaintiffs"), specifically, Annette Gadson
8  ("Gadson") and Ken Montgomery ("Montgomery").
9      The operative complaint is the Fourth Amended Complaint ("4AC"), filed January 3,
10  2014, in which plaintiffs allege disparate treatment, disparate impact and hostile work
11  environment claims. By order filed June 27, 2014, as amended August 5, 2014, the Court
12  granted in part defendants' motion to dismiss the 4AC, and, in so doing, dismissed certain
13  of the disparate treatment claims and all of the disparate impact claims. The remaining
14  claims challenge voluminous assertedly adverse employment decisions, and can be
15  grouped in four categories.
16      First, plaintiffs allege disparate treatment claims under 42 U.S.C. § 1981, Title VII
17  and/or the Fair Employment and Housing Act ("FEHA"), based on the assertion that sixteen
18  plaintiffs applied for and did not receive promotions to specified management positions
19  (see 4AC ¶¶ 620, 629, 634), on account of racial discrimination (see 4AC ¶¶ 618, 627,
20  634). The challenged positions were available at multiple locations throughout the United
21  States over the course of more than a decade. (See, e.g., 4AC ¶ 488 (challenging
22  Robinson's failure in 1999 to receive "737 fleet captain position" in Colorado), ¶ 526
23  (challenging Manswell's failure to receive in 2001 "A-320 Line Check Airman promotion" in
24  Virginia), ¶ 593 (challenging Sherman's failure to receive in 2009 "737 Chief Pilot
25  promotion" in Texas), ¶ 304 (challenging John's failure to receive in 2012 "Flight Operations
26  Duty Manager" position in New Jersey).) Under this theory, plaintiffs challenge a total of
27  138 failures to promote, as follows:
28      (1) Briscoe - challenging two failures to promote (see 4AC ¶¶ 574-575);

(2) Crocker - challenging fourteen failures to promote (see 4AC ¶¶ 239-252);

(3) Gadson - challenging one failure to promote (see 4AC ¶ 450);

(4) Hartsfield - challenging one failure to promote (see 4AC ¶ 563);

(5) John - challenging forty-six failures to promote (see 4AC ¶¶ 283-292, 294-318, 320-330);

(6) Johnson - challenging five failures to promote (see 4AC ¶¶ 188-192);

(7) Jones - challenging twenty-two failures to promote (see 4AC ¶¶ 211-225);

(8) Manswell - challenging three failures to promote (see 4AC ¶¶ 525-527);

(9) Minter - challenging six failures to promote (see 4AC ¶¶ 410-415);

(10) Montgomery - challenging three failures to promote (see 4AC ¶¶ 432-434);

(11) Noble - challenging one failure to promote (see 4AC ¶ 355);

(12) Roane - challenging six failures to promote (see 4AC ¶¶ 371-376);

(13) Robinson - challenging one failure to promote (see 4AC ¶ 488);

(14) Sherman - challenging fourteen failures to promote (see 4AC ¶¶ 593-604, 610);

(15) Tom - challenging two failures to promote (see 4AC ¶¶ 393-394); and

(16) Wilson - challenging eleven failures to promote (see 4AC ¶¶ 265-269).

Second, on behalf of each of the twenty-three plaintiffs, plaintiffs allege disparate treatment claims under § 1981, Title VII and/or FEHA, based on the assertion that plaintiffs were "precluded," on account of racial discrimination, from applying for promotions to specified management positions that defendants filled without a "general posting." (See 4AC ¶¶ 178, 619, 628, 634.) The challenged positions were available at multiple locations throughout the United States over the course of five years. (See, e.g., 4AC at 24:19-21 (challenging various plaintiffs' failures to receive in 2008 "Acting Chief Pilot position" in California); 4AC at 26:1-3 (challenging various plaintiffs' failures to receive in 2012 "Flight Operations Duty Manager" position in Virginia).) Under this theory, plaintiffs challenge 226 failures to promote, as follows:

(1) Briscoe - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(2) Crocker - challenging six failures to promote (see 4AC at 25:13 - 26:3);

3

(3) Ecung - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(4) Gadson - challenging two failures to promote (see 4AC at 26:11-12, 26:15-16);

(5) Haney - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(6) Hartsfield - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(7) Haynie - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(8) John - challenging six failures to promote (see 4AC at 25:13 - 26:3);

(9) Johnson - challenging six failures to promote (see 4AC at 25:13 - 26:3);

(10) Jones - challenging six failures to promote (see 4AC at 25:13 - 26:3);

(11) Manswell - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(12) Miller - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(13) Minter - challenging six failures to promote (see 4AC at 25:13 - 26:3);

(14) Montgomery - challenging two failures to promote (see 4AC at 26:11-12, 26:15-16);

(15) Noble - challenging six failures to promote (see 4AC at 25:13 - 26:3);

(16) Palmer - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(17) Ricketts - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(18) Roane - challenging six failures to promote (see 4AC at 25:13 - 26:3);

(19) Robinson - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(20) Sherman - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3);

(21) Tom - challenging six failures to promote (see 4AC at 25:13 - 26:3);

(22) Washington - challenging fourteen failures to promote (see 4AC at 24:16 - 26:3); and

(23) Wilson - challenging six failures to promote (see 4AC at 25:13 - 26:3).

Third, on behalf of each of the twenty-three plaintiffs, plaintiffs allege disparate treatment claims under § 1981, Title VII and/or FEHA, based on the assertion that plaintiffs did not receive "special assignments a.k.a. temporary management positions" (see 4AC ¶ 176) on account of racial discrimination (see 4AC ¶¶ 622, 632, 634). The challenged assignments were performed at multiple locations throughout the United States over the

1  course of more than five years. (See, e.g., 4AC at 27:8-10 (challenging various plaintiffs'
2  failure to receive in May 2009 "Flight Manager" special assignment in Illinois); 4AC at 33:4-
3  6 (challenging various plaintiffs' failure to receive in August 2013 "Supervisor Airport
4  Operations Ramp Service" special assignment in Virginia).) Under this theory, plaintiffs
5  challenge 975 failures to receive special assignments, as follows:
6      (1) Briscoe - challenging fifty failures to receive special assignments (see 4AC at
7  27:8 - 32:15, 87:20 - 25).
8      (2) Crocker - challenging forty-three failures to receive special assignments (see
9  4AC at 27:23 - 32:15);
10      (3) Ecung - challenging forty-eight failures to receive special assignments (see 4AC
11  at 27:8 - 32:15);
12      (4) Gadson - challenging four failures to receive special assignments (see 4AC
13  ¶ 183);
14      (5) Haney - challenging forty-eight failures to receive special assignments (see 4AC
15  at 27:8 - 32:15);
16      (6) Hartsfield - challenging forty-eight failures to receive special assignments (see
17  4AC at 27:8 - 32:15);
18      (7) Haynie - challenging forty-eight failures to receive special assignments (see 4AC
19  at 27:8 - 32:15);
20      (8) John - challenging forty-three failures to receive special assignments (see 4AC
21  at 27:23 - 32:15);
22      (9) Johnson - challenging forty-three failures to receive special assignments (see
23  4AC at 27:23 - 32:15);
24      (10) Jones - challenging forty-three failures to receive special assignments (see 4AC
25  at 27:23 - 32:15);
26      (11) Manswell - challenging forty-eight failures to receive special assignments (see
27  4AC at 27:8 - 32:15);
28      (12) Miller - challenging forty-eight failures to receive special assignments (see 4AC

1 at 27:8 - 32:15);
2  (13) Minter - challenging forty-three failures to receive special assignments (<u>see</u> 4AC
3 at 27:23 - 32:15);
4  (14) Montgomery - challenging four failures to receive special assignments (<u>see</u> 4AC
5 ¶ 183);
6  (15) Noble - challenging forty-three failures to receive special assignments (<u>see</u> 4AC
7 at 27:23 - 32:15);
8  (16) Palmer - challenging forty-eight failures to receive special assignments (<u>see</u>
9 4AC at 27:8 - 32:15);
10  (17) Ricketts - challenging forty-eight failures to receive special assignments (<u>see</u>
11 4AC at 27:8 - 32:15);
12  (18) Roane - challenging forty-three failures to receive special assignments (<u>see</u>
13 4AC at 27:23 - 32:15);
14  (19) Robinson - challenging forty-eight failures to receive special assignments (<u>see</u>
15 4AC at 27:8 - 32:15);
16  (20) Sherman - challenging fifty failures to receive special assignments (<u>see</u> 4AC at
17 27:8 - 32:15, 87:20 - 25)
18  (21) Tom - challenging forty-three failures to receive special assignments (<u>see</u> 4AC
19 at 27:23 - 32:15);
20  (22) Washington - challenging forty-eight failures to receive special assignments
21 (<u>see</u> 4AC at 27:8 - 32:15);
22  (23) Wilson - challenging forty-three failures to receive special assignments (<u>see</u>
23 4AC at 27:23 - 32:15).
24  Fourth, and lastly, on behalf of Haynie, plaintiffs allege said plaintiff has been
25 subjected to a hostile work environment on account of race, for a period of twelve years.
26 (<u>See</u> 4AC ¶¶ 518, 641.)
27  In sum, in addition to alleging one hostile work environment claim, plaintiffs
28 challenge a total of 1139 failures to receive promotions and special assignments.

## DISCUSSION

By the instant motion, defendants argue plaintiffs' claims are not properly joined in one action under Rule 20(a) of the Federal Rules of Civil Procedure, or, alternatively, that if joinder is proper, severance is appropriate.

"Under Federal Rule of Civil Procedure 20, joinder is proper if (1) the plaintiffs assert[ ] a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000). "Even once these requirements are met, a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." Id. (internal quotation and citation omitted) (affirming order severing age discrimination claims of ten plaintiffs, each of whom had been terminated as part of reduction in force; finding "likelihood of prejudice [to defendant] and confusion").

Here, it would appear joinder is proper under Rule 20, at least as to some of the claims alleged on behalf of the Captain Plaintiffs, as each of the Captain Plaintiffs bases his disparate treatment claims in part on his failure to receive some of the same promotions and special assignments on which the other Captain Plaintiffs base their claims. (See, e.g., 4AC at 24:6-10, 25:9 - 26:3 (identifying six "managerial positions" for which each of the Captain Plaintiffs would have applied had positions been posted as available).) Nonetheless, and, even assuming all claims brought by all of the Captain Plaintiffs, as well as all claims brought by both of the Operations Supervisor Plaintiffs, can, under Rule 20, be joined in a single action, the Court, for the reasons discussed below, finds such permissive joinder does not comport with the principles of fundamental fairness and would result in prejudice to defendants.

As in Coleman, in which, as noted, ten terminated employees sought to join age discrimination claims in one action, the employer here "would be prejudiced by having all [twenty-three] plaintiffs testify in one trial." See Coleman, 232 F.3d at 1296. As the Coleman court observed, "even the strongest jury instructions could not have dulled the

impact of a parade of witnesses, each recounting his contention that defendant laid him off because of his [protected status]." See id. (internal quotations and citation omitted); see also Henderson v. AT&T Corp., 918 F. Supp. 1059, 1061, 1063-64 (S.D. Tex. 1996) (holding, assuming claims of five plaintiffs alleging employment discrimination claims could be joined, severance was appropriate due to undue prejudice to defendant; finding "there [was] a great danger that the jury [would] find [the employer] liable based on the sheer number of witnesses testifying about its purported wrongdoing").

Further, there exists a "danger of jury confusion." See Coleman, 232 F.3d at 1296 (holding "danger of jury confusion" supports severance of otherwise properly joined claims). Here, as in Coleman, plaintiffs will necessarily offer individualized evidence to support the claims of each plaintiff, which will require the jury, for each posted position, "to examine individually [each plaintiff's] employment history as well as the explanations given by [defendants] for not [selecting] him or her, explanations that would require the testimony of each employee's supervisors and raters," see id., as well as the testimony of any other individual(s) involved in the selection process. Additionally, as to each unposted position and assignment as to which a plaintiff bases his or her claims, such plaintiff will be required to offer individualized evidence to support his or her allegation that he or she would have applied for such unposted position or assignment. See Williams v. Giant Food Inc., 370 F.3d 423, 432 (4th Cir. 2004) (holding, where employer has not posted available "promotion opportunities," plaintiff "cannot be treated as if she had applied for those promotions unless she can show that she would have applied had she known about them"). Moreover, a great part of such individualized evidence likely would be inadmissible to support the claims of other plaintiffs, thus necessitating a great number of limiting instructions, which, after a certain point, cannot meaningfully assist the jury in keeping the evidence supporting any one plaintiff's claims separate from the evidence supporting the claims of the other plaintiffs. See Henderson, 918 F. Supp. at 1063-64 (holding, if employment discrimination claims of multiple plaintiffs were to be tried together, "the jury may simply resolve the confusion by considering all of the testimony to pertain to all the

1   claims, despite any limiting instructions").

2   The Court further notes that the joinder of twenty-three individual plaintiff's claims in
3   a single action appears to be the primary reason the instant case has remained mired at
4   the pleading stage for well over two years, as it has taken plaintiffs five attempts to
5   sufficiently state claims on behalf of each plaintiff. A delay of such length does not assist
6   any party. See Sibron v. New York, 392 U.S. 40, 57 (1968) (observing "litigation is better
7   conducted when the dispute is fresh and additional facts may, if necessary, be taken
8   without a substantial risk that witnesses will die or memories fade"). Even though the Court
9   ultimately has found the 4AC includes sufficiently pleaded claims on behalf of each plaintiff,
10  there is no indication the action will now proceed to resolution within an acceptable time
11  frame for actions alleging employment discrimination claims.

12  Indeed, because the ninety-nine page 4AC remains a pleading that includes a large
13  number of dismissed claims, and, given the manner in which the claims are set forth
14  therein, e.g., multiple paragraphs comprising both dismissed and non-dismissed claims, it
15  would be difficult for the parties to use that document as a means of framing the issues for
16  purposes of pretrial proceedings and trial, thus necessitating further revision of the
17  operative complaint before the case could proceed as a joined action. (See, e.g., 4AC at
18  28:17-19, ¶¶ 622, 632, 637 (alleging, on behalf of each of the Captain Plaintiffs, disparate
19  treatment claims under Title VII, FEHA and § 1981, based on failure to receive special
20  assignment for "Sabre Training at LAX"); Order, filed August 5, 2014, at 16:14-19
21  (dismissing Title VII and FEHA claims based on failure to receive special assignment for
22  "Sabre Training at LAX" brought on behalf of Crocker, John, Johnson, Jones, Noble and
23  Roane; dismissing FEHA claims based on failure to receive said special assignment
24  brought on behalf of Haynie and Tom).) Under such circumstances, defendants' prediction
25  that "[c]ountless hours will be needed to decipher the precise scope and nature of [the]
26  claims asserted by each individual [p]laintiff" (see Defs.' Reply, filed November 7, 2014, at
27  2:24-25), which effort will entail "interlineat[ing] the [4AC] for each of the twenty-three
28  [p]laintiffs to determine which allegations remain pertinent to which [p]laintiffs" (see Defs.'

9

1  Mot., filed October 3, 2014, at 25:4-5), cannot be characterized as hyperbole. See, e.g.,
2  McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (noting, as to "confusing"
3  complaint, judge and defendants would, as "a practical matter," be required to "prepare
4  outlines to determine who is being sued for what"; further noting defendants are "then put
5  at risk that their outline differs from the judge's, that plaintiffs will surprise them with
6  something new at trial which they reasonably did not understand to be in the case at all,
7  and that res judicata effects of settlement or judgment will be different from what they
8  reasonably expected").

9      Further complicating matters is the likelihood of extensive discovery, with attendant
10 motion practice, as well as, potentially, the equivalent of twenty-three motions and cross-
11 motions for summary judgment and/or adjudication.  Although plaintiffs contend joinder
12 would "permit[ ] more economical discovery of common facts" (see Pls.' Opp. at 9:16-23),
13 joinder is not the only procedural mechanism that will permit discovery and other pretrial
14 matters to proceed in a coordinated manner.  Where appropriate, two or more of the
15 severed cases can be related, see Civil L.R. 3-12, which assignment, upon a proper
16 showing, would allow for coordination of discovery and/or for other pretrial matters.  See
17 Coleman, 232 F.3d at 1296-97 (rejecting plaintiffs' argument that severance caused
18 plaintiffs to be subjected to "duplicate discovery," where three cases remaining in district
19 were assigned to same district judge, and parties thereby had "benefitted from common
20 discovery and counsel").

21     Accordingly, defendants' motion for severance will be granted.  Specifically, the
22 claims of all plaintiffs, other than Johnson, will be severed from the instant action, and the
23 instant action will proceed only on behalf of Johnson.  Additionally, each plaintiff will be
24 directed to file a Fifth Amended Complaint, setting forth his or her remaining claims, in his
25 or her individual action.

26 //
27 //
28 //

## CONCLUSION

For the reasons stated above, defendants' motion to sever is hereby GRANTED, as follows:

1. The instant action shall proceed only on the remaining claims alleged on behalf of plaintiff Johnson.

2. As to each of the other twenty-two plaintiffs named in the 4AC, the Clerk is hereby DIRECTED to open a new case, to waive the filing fee for each new case, and to file in each such case a copy of the 4AC (see Doc. No. 90), along with a copy of the instant order. All filings in the instant action, up to and including the instant order, shall apply to said new cases.

3. In each new case, as well as in the above-titled case, the named plaintiff is hereby DIRECTED to file, no later than March 2, 2015, a Fifth Amended Complaint in which such plaintiff repleads his/her remaining claims. Each such plaintiff may not add new claims or new defendants without leave of court. See Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED.**

Dated: February 2, 2015

MAXINE M. CHESNEY
United States District Judge