UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERWIN WASHINGTON,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED AIR LINES, INC., et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00471-VC<br><br>**ORDER TO SHOW CAUSE REQUIRING PERSONAL APPEARANCE OF ERWIN WASHINGTON** |

　　　　The Court finds that Erwin Washington and his lawyers have willfully disregarded their discovery obligations in this case, to the point that dismissal of the lawsuit would be warranted. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948-49 (9th Cir. 1993).  However, the Court is tentatively of the view that, in lieu of dismissal of Washington's case as a discovery sanction, Washington should be personally sanctioned in an amount representing 50 percent of the costs and fees incurred by the defendants in attempting to obtain documents from him (including his emails) and in preparing for and taking his deposition, which was done without the benefit of the production of those documents (particularly his emails).  The Court is tentatively of the view that Washington's counsel should be sanctioned the other 50 percent.

　　　　Washington is ordered to personally appear at the case management conference on October 11, 2016.  By the time of the case management conference, to even have a chance of avoiding dismissal of his case, Washington must complete payment for every day's worth of sanctions levied against him in the Court's September 20, 2016 order, and must fully complete his document production (including the production of a detailed privilege log) to the defendants. Counsel for the defendants should be prepared to explain at the case management conference

why these monetary sanctions, as opposed to dismissal, are not adequate under the circumstances. Washington and his lawyers will have an opportunity to respond to any arguments made by the defendants about why Washington's case should be dismissed as a discovery sanction. In addition, the defendants should file a detailed declaration by 5:00 pm on October 10, 2016 setting forth all the costs and fees they have incurred in attempting to obtain documents from Washington, and in preparing for and taking his deposition without the benefit of the production of his emails.

I.

Washington's case is one of several related cases before the Court, all of which involve allegations that defendants United Airlines and Continental Airlines, Inc. ("United") engaged in racial discrimination in giving promotions and other job opportunities to pilots. Because there are currently 10 such cases before the Court (and there were originally 18), the parties selected several plaintiffs to serve as bellwethers. Washington was selected as one of the five bellwether plaintiffs. The fact discovery cutoff is November 1, 2016, and the five bellwether cases are set to go to trial back-to-back starting on June 5, 2017.

On September 9, 2016, United filed several letter briefs describing discovery disputes in Washington's case and others. In one of the letters, United sought to compel document productions from Washington, because Washington had failed to respond adequately to requests for production served in April, May, and July 2016. United's counsel stated that she met and conferred with Washington's counsel several times about the deficiencies in Washington's document productions and that Washington's counsel had agreed to remedy deficiencies, but failed to do so. United further indicated that Washington's counsel failed to respond to subsequent inquiries about the status of production. The letter also states that, although counsel expected to receive documents in advance of Washington's deposition in August, United received no documents until Washington was actually deposed. Washington produced a single email on the first day of deposition and ten pages of documents on the second. Washington testified at the deposition that he had other responsive documents in his possession that he had

not yet produced. In its September 9 letter, United asked the Court to sanction Washington by dismissing his case with prejudice.

In response, counsel for Washington confirmed that Washington provided 11 pages of documents at his deposition and approximately 157 pages of documents after his deposition. But counsel acknowledged that there were documents and email files in Washington's possession that he had not yet provided. Counsel stated that Washington, for several months prior to his deposition, had not responded to counsel's written requests or phone calls. Counsel further stated that Washington had recently disclosed that his mother had died in November 2015 and that his sibling's cancer "became terminal" shortly after. Counsel for Washington requested that the Court give Washington a deadline by which to complete his document submissions and asked the Court not to dismiss his case. Counsel sent this letter to the Court on September 15, 2016.

The Court held a case management conference on Monday, September 19 to address the pending discovery disputes in Washington's case and the related cases. At this case management conference, the Court informed counsel for Washington that it was ordering Washington to produce all responsive documents and a detailed privilege log by the following Monday, September 26, 2016, or else his case would be dismissed with prejudice as a discovery sanction. The Court further warned that, beginning on Tuesday, September 20, 2016, Washington would be sanctioned $50 per day until he produced all responsive documents and a detailed privilege log. The Court acknowledged that the death and illness of Washington's relatives justified some delay, but not the lengthy and unreasonable delay that had transpired in the case. The following day, the Court issued a written order consistent with its oral instructions, specifying that Washington would be required to pay $50 per day in sanctions until he produced the documents and privilege log, and stating that his case would be dismissed if there was no production by Monday, September 26, 2016. *See* Sept. 20, 2016 Order (Dkt. No. 174). Counsel for Washington and United were instructed to file a report detailing the status of Washington's production on Tuesday, September 27, 2016. *Id.*

At the same time it issued the order in the Washington case, the Court also issued orders

levying monetary sanctions on the plaintiffs and counsel for the plaintiffs in the other four bellwether cases (*Johnson v. United Continental Holdings*, No. 12-cv-02730; *Jones v. United Airlines, Inc.*, No. 15-cv-00462; *Crocker v. United Airlines, Inc.*, No. 15-cv-00468; and *Hartsfield v. United Airlines, Inc.*, No. 15-cv-00477), based on those plaintiffs' failure to produce documents. The plaintiffs and counsel were each sanctioned $25 per day, beginning Friday, September 23, for each day the plaintiff failed to complete his document production and provide a detailed privilege log.

In the September 27, 2016 status report, counsel for Washington stated that he provided United with 433 pages of documents, consisting of employment and payroll records. However, the report also stated that Washington and his counsel had yet to produce any emails or a privilege log to United. Washington counsel said that he received 1,721 emails from Washington on Saturday, September 24, 2016. Counsel described the steps he took upon receipt of those emails as follows:

> On Monday, September 26, 2016, I uploaded the email archive to our discovery vendor. With archives of this nature, the discovery vendor unzips the archive and provides an online review and production platform. Between the instant case and the related actions, we are dealing with a universe of over 10,000 emails. The discovery vendor runs searches and separates out communications to and from attorneys and the related plaintiffs, and a privilege log is created of those emails withheld. The remainder are then reviewed by counsel and produced. As of the time of writing this status report, the discovery vendor has not yet completed the processing required for counsel to proceed to the step of review prior to production. It will then take several days to complete review of these emails before producing them. Although this sounds like an easy task, for the court's understanding, in the instant case, based on the emails we have seen in the related cases, probably more than half of these emails will constitute emails between and among the Plaintiff group and their counsel. This means that close to 1000 emails will be subject to a privilege claim. This cannot reasonably be done by hand but is done by a discovery firm's electronic parsing of the emails by senders and recipients, with reports generated, and then privileged emails pinpointed by the presence of an attorney involved with the email.

*See* Status Report by Washington (Dkt. No. 177). Washington asked the Court to consider that

Washington attended a funeral on the east coast on Friday, September 23 and his laptop was stolen on August 24, 2016. As counsel for United confirmed in its status report, as of September 27, 2016, United had yet to receive Washington's emails or a privilege log.

The following day, Wednesday, September 28, the Court received a supplemental status report from Washington's counsel indicating that the discovery vendor had completed processing Washington's emails and that counsel was now in a position to begin reviewing the documents and preparing the privilege log. Supplemental Status Report (Dkt. No. 179).

## II.

The Court finds that Washington's delay in producing documents and failure to comply with the Court's September 20, 2016 Order demonstrate "willfulness, bad faith, or fault" that would justify dismissal with prejudice. *Henry*, 983 F.2d at 948. Willfulness may be demonstrated by "disobedient conduct not shown to be outside of the control of the litigant." *Id.* In this case, Washington disregarded his obligations to respond to multiple requests for production, despite having had ample time in which to do so, and has now disobeyed this Court's Order requiring him to produce. It is significant that Washington waited until his deposition to produce 11 pages of documents and then continued to withhold documents even after United filed its letter brief bringing Washington's deficient production to the attention of the Court. It was not until four days after this Court ordered Washington to produce that Washington finally sent his emails to counsel, at which point Washington's counsel waited an additional two days to upload documents to his discovery vendor.

None of these delays resulted from events outside of Washington's control. The death and illness of Washington's relatives, while deeply unfortunate, do not excuse the length of delay in this case. Although a funeral on the east coast might ordinarily justify the delay of a day or two, it is not sufficient to excuse compliance with the Court's clear and unequivocal deadline.[1] It

---

[1] It is unclear to the Court how the theft of Washington's laptop on August 24, 2016 affected his ability to comply with the Court's September 20th Order. To the extent it made it more difficult for Washington to search for documents and files, this added difficulty was not insurmountable and does not excuse Washington's failure to produce his emails in a timely fashion.

is also worth pointing out that merely handing documents over to counsel does not render delays "outside the control of the litigant."  Washington was ordered to produce documents and a privilege log by the specified deadline, and he has not done so.  Whether the delay can be blamed on his lawyer or his lawyer's discovery vendor, Washington bears the ultimate responsibility for the latest delay in production. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990); *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990) ("The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client."); *see also Rodgers v. Curators of the Univ. of Mo.*, 135 F.3d 1216, 1220 (8th Cir. 1998) (rejecting appellant's argument that he timely delivered documents to counsel making delay in production "unintentional", reasoning that "appellant is generally bound by the actions (or inaction) of his attorney when his attorney acts in her representational capacity").

      Moreover, neither Washington nor his counsel has provided any justification for counsel's failure to get the responsive emails and the privilege log to United by the time prescribed in the Court's most recent order – that is, by September 26, 2016.  In particular, the assertion by Washington's counsel that he could not have provided these emails on time, because that many emails cannot be reviewed "by hand," is preposterous.  1,700 emails can be reviewed "by hand," and could have been reviewed on time to make the production in compliance with the Court's deadline.  This is particularly so when the primary purpose of the review is to determine whether an email is privileged – something that can often be accomplished by spending less than a minute looking at it.  Indeed, any first-year associate receiving a document-review assignment of this scope (rather than the far more onerous document-review assignment typical of multi-party litigation) would celebrate his good fortune.  While the Court is mindful that law firms vary in size and resources, and that e-discovery vendors can provide helpful assistance, none of these considerations excuses counsel's obligation to provide competent representation to his clients.  Model Rules of Prof'l Conduct r. 1.1 (Am. Bar Ass'n 2015).  Counsel's failure to meet the deadline after his (admittedly belated) receipt of the emails from Washington can only be

understood as willful refusal to comply in good faith with discovery obligations, and a refusal to actually to the work necessary to advance his client's case forward. And as mentioned above, Washington himself is responsible for his counsel's failings in this regard.

Moreover, even if one were to accept as true the claim by Washington's counsel that the emails could not have been reviewed between the time Washington finally provided them and the deadline set by the Court's order, this argument is a straw man. United has been justifiably demanding these documents for many months. Even putting aside the time period prior to September 9, when United filed its letter brief describing this discovery dispute and requested dismissal of Washington's case, one would think that once Washington and his lawyer received that letter, they would have been scrambling to collect the emails. Instead, Washington didn't provide them to his counsel until September 23, only to see his counsel provide lame excuses for his failure to turn them over to United by September 26.

Washington's delays have interfered with the expeditious resolution of the cases and this Court's management of its docket in several respects. First, the purpose of selecting certain plaintiffs as bellwethers is to "highlight the strength and weaknesses of the parties' respective cases" to bring resolution to the litigation. *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 995 (9th Cir. 2007). A bellwether plaintiff's failure to produce documents deprives the defendants of the ability to evaluate the strengths and weaknesses of the cases properly. Second, the discovery deadlines, dispositive motions hearings, and trial scheduling in Washington's case are closely tied to the schedules of the related cases. Adherence to these deadlines is critical to ensuring that these cases stay on track for trial. Washington's failure to comply with discovery deadlines threatens to push back the fact discovery cutoff in his case, which in turn threatens the management and timely resolution of the related cases.

Nor is there any question that United has suffered prejudice. *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Failing to produce documents as ordered is considered sufficient prejudice. . . . The law also presumes prejudice from unreasonable delay." (citations omitted)). In addition to the prejudice inherent in the

delayed production of documents, United has also demonstrated actual prejudice: United's counsel has expended significant time and resources as a result of delay, including meeting and conferring with counsel regarding the inadequacies of Washington's production and preparing the discovery letter outlining these deficiencies to the Court.  United took Washington's deposition without any documents, save for the 11 documents he produced on the mornings of his deposition.  United will also bear the added time and expense of deposing Washington a second time if the documents are ever finally turned over.

Finally, dismissal would seem appropriate because it is arguable that lesser sanctions would not be effective in ensuring compliance with discovery obligations.  Monetary sanctions of $50 per day against Washington did not secure compliance.  Nor did the threat of possible sanctions against Washington's counsel; counsel was on notice of the potential that he or his firm might also be sanctioned because the Court contemporaneously sanctioned him in the other four bellwether cases for substantially similar conduct.  While these sanctions and the clear threat of dismissal appear to have prompted some action by Washington and his counsel, the lagging pace with which Washington and his lawyer have moved to produce the required documents suggests that additional sanctions might be unlikely to inspire prompt compliance.

### III.

Nonetheless, in light of the strong public policy in favor of ensuring that cases are decided on the merits, the Court is tentatively inclined to conclude that it is worth attempting to impose the lesser sanction of requiring Washington and his counsel to split the costs and fees United has incurred in dealing with the nightmare that Washington and his counsel have inflicted upon it.  The Court will consider this lesser sanction if: (i) Washington personally appears at the case management conference to demonstrate that he fully understands his obligations in this case; (ii) Washington has fully complied with his production obligations by the time of the case management conference; and (iii) Washington has fully paid the sanctions ordered by the Court on September 20, 2016 for every day of his failure to produce the documents and privilege log (that is, $50 per day from September 20 until they are produced).

**IT IS SO ORDERED.**

Dated: October 4, 2016

_____

VINCE CHHABRIA
United States District Judge